UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TEXAS

**FILED**

FEB 08 2019

Clerk, U.S. District Court
Texas Eastern

4:19 cv 105

| | |
|---|---|
| **CRAIG CUNNINGHAM,**<br>**Plaintiff,**<br><br>**v.**<br><br>AAA Law Group, LLC, Edgar Benes, Edgar A. Benes, P.A., Trimerge Consulting Group, Inc., Debt Pay Gateway, Inc., Capital Debt Solutions, LLC, Justin O'Dell, Matthew Mullen, Philip Stevens, John/Jane Does 1-5<br><br>**Defendant** | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ |

### Plaintiff's Original Complaint

### Parties

1. The Plaintiff is Craig Cunningham and natural person and was present in Texas for all calls in this case in Collin County.

2. AAA Law Group, LLC is a Florida corporation that can be served via registered agent Edgar Benes, 2300 NW Corporate Blvd Suite 222, Boca Raton, FL 33431.

3. Edgar Benes is a Florida attorney, not licensed to practice law in Texas and can be served at 2300 NW Corporate Blvd., ste 222 Boca Raton, FL 33431

4. Edgar A Benes, PA is a Florida corporation that can be served via registered agent Edgar Benes, 2300 NW Corporate Blvd Suite 222, Boca Raton, FL 33431.

5. Tri merge Consulting Group, Inc., is an Arizona corporation that can be served via registered agent Chris Culpepper, 11445 E Via Linda # 2-467, Scottsdale, AZ 85259 or Matthew Mullen 945 W. Broadway 2115, Mesa, Az 85210.

6. Matthew Mullen is a natural person and manager of Tri Merge Consulting Group, Inc., and can be served at 635 S. Ellis St., APT 2010 Chandler, AZ 85224.

7. Debt Pay Gateway, Inc is a california corporation that can be served via registered agent Christopher Queen, 120 Birmingham Dr., ste 245, Cardiff, CA 92007

8. Capital Debt Solutions, LLC is an Arizona corporation and can be served via registered agent Justin Odell at 1940 W. University Dr., Mesa, Az 85201 or 1727 W Emelita Ave Apt 2005 Mesa, Az 85202.

9. Justin O'dell is a natural person and corporate officer of Capital Debt Solutions who can be served at 1727 W Emelita Ave Apt 2005 Mesa, Az 85202 or 1940 W. University Dr., Mesa, Az 85201.

10. Phillip Stevens is the name of a natrual person whose identity and address is not completely known to the Plaintiff.

## JURISDICTION AND VENUE

11. Jurisdiction.  This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012). This Court has supplemental subject matter jurisdiction over Plaintiff's claim arising under Texas Business and Commerce Code 305.053 because that claim: arises from the same nucleus of operative fact, i.e., Defendants' telemarketing robocalls to Plaintiff; adds little complexity to the case; and doesn't seek money damages, so it is unlikely to predominate over the TCPA claims.

12. **Personal Jurisdiction.**  This Court has general personal jurisdiction over the

defendant because they have repeatedly placed calls to Texas residents, and derive revenue from Texas residents, and the sell goods and services to Texas residents, including the Plaintiff.

13. This Court has specific personal jurisdiction over the defendants because the calls at issue were sent by or on behalf of Teliamarie Lamb and DR. Finance, LLC.

14. **Venue.** Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to the claims—the calls and sale of goods and services directed at Texas residents, including the Plaintiff—occurred in this District and because the Plaintiff resides in this District. residing in the Eastern District of Texas when he recieved a substantial if not every single call from the Defendants that are the subject matter of this lawsuit.

15. This Court has venue over the defendants because the calls at issue were sent by or on behalf of the above named defendants to the Plaintiff a Texas resident.

**THE TELEPHONE CONSUMER PROTECTION ACT OF 1991, 47 U.S.C. § 227**

16. In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding telemarketing.

17. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

18. The TCPA makes it unlawful "to initiate any telephone call to any residential

telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States, or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

19. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

20. Separately, the TCPA bans making telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

21. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

22. According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

23. The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

24. The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines. In particular:[A] consumer's written consent to receive telemarketing robocalls must be signed and be

---

[1] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

sufficient to show that the consumer:  (1) received clear and conspicuous disclosure

of the consequences of providing the requested consent, *i.e.*, that the consumer will

receive future calls that deliver prerecorded messages by or on behalf of a specific

seller; and (2) having received this information, agrees unambiguously to receive

such calls at a telephone number the consumer designates. In addition, the written

agreement must be obtained without requiring, directly or indirectly, that the

agreement be executed as a condition of purchasing any good or service.

25. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of*
*1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks
omitted). FCC regulations "generally establish that the party on whose behalf a
solicitation is made bears ultimate responsibility for any violations." *In the Matter of*
*Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC
Rcd. 12391, 12397 ¶ 13 (1995).

26. The FCC confirmed this principle in 2013, when it explained that "a seller ... may be
held vicariously liable under federal common law principles of agency for violations
of either section 227(b) or section 227(c) that are committed by third-party
telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28
FCC Rcd. 6574, 6574 ¶ 1 (2013).

27. Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569
F.3d 946, 951 – 52 (9th Cir. 2009).

28. A corporate officer involved in the telemarketing at issue may be personally liable
under the TCPA. *E.g.*, *Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-
10010, 2013 U.S. Dist. LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any

courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute." (internal quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

### The Texas Business and Commerce Code 305.053

29. The Texas Business and Commerce code has an analogus portion that is related to the TCPA and was violated in this case.

30. The Plaintiff may seek damages under this Texas law for violations of 47 USC 227 or subchapter A and seek $500 in statutory damages or $1500 for willful or knowing damages.

### FACTUAL ALLEGATIONS

31. Rachel with Card Services is the bane of telemarketing calls for many consumers. These are calls long since described by the FTC as fraudulent, misleading, and offering false promises and exaggerated claims to consumers. These scams have taken place for years and continue to this day. Edgar Benes is the ring leader of one of these scam operations and has directed this scam through the guise of his professional legal advice.

**AAA Law Group, LLC, Edgar Benes, Edgar A. Benes, P.A., Trimerge Consulting Group, Inc., Debt Pay Gateway, Inc., Capital Debt Solutions, LLC, Justin O'Dell, Matthew Mullen, and Philip Stevens calls to the Plaintiff**

32. Mr. Cunningham received multiple calls from a variety of spoofed caller ID's that

contained a pre-recorded message and were initiated using an automated telephone dialing system. The calls were on behalf of AAA Law Group, LLC, Edgar Benes, Edgar A. Benes, P.A., Trimerge Consulting Group, Inc., and Debt Pay Gateway, Inc and offered the debt settlement services of the above named entities and individuals.

33. The calls were initiated by Capital Debt Solutions at the direction of Justin Odell, Tri Merge Consulting Group, Inc. at the direction of Matthew Mullen for the benefit of AAA Law Group, LLC, Edgar Benes, Edgar A. Benes, P.A., Trimerge Consulting Group, Inc., and Debt Pay Gateway, Inc.

34. The calls had a delay of 3-4 seconds of dead air before the pre-recorded message began indicating the calls were initiated using an ATDS. The Plaintiff recieved calls directly from Tri Merge consulting Group and received contracts for services between the Plaintiff and the defendants Edgar Benes, AAA Law Group, LLC and Debt Pay Gateway, Inc., (see Ex A, B, C, and D) The Plaintiff communicated with the defendants and gave the name of "Craig Jackson", this this is the name reflected in the paperwork.

**Alleged Calls**

| Date/Time | Type | Number | Duration | Direction | Dec 2018 |
|---|---|---|---|---|---|
| 26/12/2018 9:34 PM | call | (161) 533-1789 | 52s | inbound | 11 calls |
| 26/12/2018 8:13 PM | call | (615) 331-7890 | 1m 9s | inbound | |
| 19/12/2018 9:23 PM | call | (161) 533-1789 | 41s | inbound | |
| 17/12/2018 3:37 PM | call | (615) 331-7890 | 1m 9s | inbound | |
| 17/12/2018 3:33 PM | call | (161) 533-1789 | 1m 9s | inbound | |
| 14/12/2018 8:14 PM | call | (161) 533-1789 | 1m 9s | inbound | |
| 12/12/2018 9:37 PM | call | | 19m 20s | inbound | |
| 12/12/2018 8:09 PM | call | | 5m 31s | inbound | |
| 11/12/2018 5:51 PM | call | (161) 533-1789 | 35s | inbound | |
| 08/12/2018 1:30 PM | call | (161) 533-1789 | 1m 9s | inbound | |
| 07/12/2018 9:44 PM | call | (615) 331-7890 | 1m 9s | inbound | |
| | | | | | Jan 2019 |
| 22/01/2019 5:42 PM | call | (520) 585-5898 | 36m 45s | inbound | 21 calls |
| 22/01/2019 5:35 PM | call | (480) 999-0052 | 7m 4s | inbound | |
| 22/01/2019 5:15 PM | call | (480) 999-0052 | 7m 20s | inbound | |

| 22/01/2019 3:43 PM | call | | 18m 34s | inbound | |
|---|---|---|---|---|---|
| 22/01/2019 2:57 PM | call | (615) 331-7890 | 1m 9s | inbound | |
| 17/01/2019 3:59 PM | call | (615) 331-7890 | 1m 9s | inbound | |
| 11/01/2019 4:06 PM | call | (615) 331-7890 | 33s | inbound | |
| 10/01/2019 9:39 PM | call | (615) 331-7890 | 1m 9s | inbound | |
| 10/01/2019 6:51 PM | call | (161) 533-1789 | 1m 9s | inbound | |
| 08/01/2019 7:53 PM | call | | 18s | inbound | |
| 08/01/2019 6:01 PM | call | | 5s | inbound | |
| 08/01/2019 6:01 PM | call | | 6s | inbound | |
| 08/01/2019 6:01 PM | call | | 11s | inbound | |
| 08/01/2019 6:01 PM | call | | 11s | inbound | |
| 08/01/2019 6:01 PM | call | | 11s | inbound | |
| 08/01/2019 6:01 PM | call | | 6s | inbound | |
| 08/01/2019 6:00 PM | call | | 8s | inbound | |
| 08/01/2019 6:00 PM | call | | 21s | inbound | |
| 08/01/2019 5:59 PM | call | | 37s | inbound | |
| 08/01/2019 1:42 PM | call | | 1m 13s | inbound | |
| 08/01/2019 1:02 PM | call | (161) 533-1789 | 39m 17s | inbound | |
| 04/01/2019 4:25 PM | call | (615) 331-7890 | 1m 9s | inbound | |
| | | | | | Feb 2019 |
| 07/02/2019 5:43 PM | call | (615) 331-4188 | 4m 57s | inbound | 10 calls |
| 07/02/2019 5:03 PM | call | (615) 331-8573 | 37s | inbound | |
| 07/02/2019 3:48 PM | call | (480) 771-3495 | 19m | inbound | |
| 07/02/2019 3:24 PM | call | (480) 771-3495 | 5s | inbound | |
| 07/02/2019 3:24 PM | call | (480) 771-3495 | 30s | inbound | |
| 06/02/2019 7:44 PM | call | (480) 771-3495 | 59s | inbound | |
| 04/02/2019 4:11 PM | call | (480) 771-3495 | 1m 18s | inbound | |
| 04/02/2019 4:10 PM | call | (480) 771-3495 | 20s | inbound | |
| 04/02/2019 3:56 PM | call | (480) 771-3495 | 9m 5s | inbound | |
| 04/02/2019 3:49 PM | call | (480) 771-3495 | 5m 36s | inbound | |

35. In 2018 and 2019, the Plaintiff recieved multiple calls from multiple spoofed and non-working caller ID's all designed to trick consumers into picking up the phone by using false, misleading, and fraudulent caller ID's. These calls were not related to an emergency purpose or any consent provided by the Plaintiff. The Plaintiff alleges a total of 42 calls.

*36.* One call was from 615-331-1789 to 615-331-7262 on 1/8/2019 and contained a pre-recorded message and was initiated by an automated telephone dialing as indicated by a 3-4 second delay of dead air when the call first connected. This call contained a pre-recorded message which stated: " *"This is not a solicitation call. Hi, this is the credit*

*card holder reward center with Visa Mastercard. We have been monitoring your credit card accounts for the last 6 months. Congratulations on your excellent payment history! You now qualify for a 0% interest rate on all your credit card accounts. If you have completed this process or are not interested, press 3 now. Otherwise press 1 now to speak... "*

37. The Plaintiff spoke with an unknown agent with a thick foreign accent who claimed that he was with *"account services"* and could lower the Plaintiff's credit card rates to 0%. The Plaintiff gave the unique pseudonym of "Craig Jackson" in order to track and associate all future calls to these telemarketers. The agents referred the Plaintiff to an affiliate of Capital Debt Solutions, LLC that transferred the Plaintiff's information to Capital Debt Solutions, LLC and finally to Tri Merge Consulting Group, LLC. Tri Merge Consulting Group later on 1/22/2019. The Plaintiff recieved multiple calls from Trimerge directly on this date from 480-999-0052 and Trimerge emailed the Plaintiff a contract with Edgar Benes and AAA Law Group, LLC a company owned and controlled by Edgar Benes, a Florida attorney that is not licensed to practice law in Texas.

*38.* The 1789  number is a non-working number and was picked specifically because it is very similar to the Plaintiff's actual phone number of 7262 and  is called "Neighborhood spoofing" designed to trick consumers into picking up the call as it appears to be a local call. This call contained a pre-recorded message after a 3-4 second pause of dead air. Upon further conversation with the representative who had a thick foreign accent and sounded as if he was calling from overseas, the Plaintiff was transferred live to a "verification" rep and then finally to an agent who stated he

was with Trimerge Consulting Group, Inc., who in turn offered the Plaintiff a contract with Edgar Benes, AAA Law Group, and Edgar A. Benes, PA, and Debt Pay Gateway, Inc for debt relief services.

39. AAA Law Group, LLC, Edgar Benes, Edgar A. Benes, P.A., Trimerge Consulting Group, Inc., Debt Pay Gateway, Inc., Capital Debt Solutions, LLC, Justin O'Dell, Matthew Mullen, and Philip Stevens knew full well that overseas telemarketers were placing calls on their behalf to consumers across the country pitching debt relief services by Teliamarie Lamb and DR. Finance, LLC which was initiated using an automated telephone dialing system and contained a pre-recorded message.

40. Mr. Cunningham has a limited data plan. Incoming text messages chip away at his monthly allotment.

41. Mr. Cunningham has limited data storage capacity on his cellular telephone. Incoming calls from AAA Law Group, LLC, Edgar Benes, Edgar A. Benes, P.A., Trimerge Consulting Group, Inc., Debt Pay Gateway, Inc., Capital Debt Solutions, LLC, Justin O'Dell, Matthew Mullen, and Philip Stevens and his related entities consumed part of this capacity.

42. No emergency necessitated the calls

43. Each call was sent by an ATDS.

**AAA Law Group, LLC, Edgar Benes, Edgar A. Benes, P.A., Trimerge Consulting Group, Inc., Debt Pay Gateway, Inc., Capital Debt Solutions, LLC, Justin O'Dell, Matthew Mullen, and Philip Stevens, Knowing and Willful Violations of Telemarketing Regulations 47 USC 227(c)(5)**

44. Mr. Cunningham asked for an internal do-not-call policy from all parties in this case,

but none of the defendants sent the Plaintiff a internal do-not-call policy upon demand.

45. The telemarketers that called falsely identified themselves claiming to be with "card services" instead of truthfully saying that they were calling on behalf of Edgar Benes and AAA Law Group, LLC or Edgar A Benes, PA.

46. AAA Law Group, LLC, Edgar Benes, Edgar A. Benes, P.A., Trimerge Consulting Group, Inc., Debt Pay Gateway, Inc., Capital Debt Solutions, LLC, Justin O'Dell, Matthew Mullen, and Philip Stevens  knowingly violated the TCPA by initiating or hiring telemarketers to initiate automated calls with pre-recorded messages to the Plaintiff.

47. AAA Law Group, LLC, Edgar Benes, Edgar A. Benes, P.A., Trimerge Consulting Group, Inc., Debt Pay Gateway, Inc., Capital Debt Solutions, LLC, Justin O'Dell, Matthew Mullen, and Philip Stevens  never sent Mr. Cunningham any do-not-call policy.

48. AAA Law Group, LLC, Edgar Benes, Edgar A. Benes, P.A., Trimerge Consulting Group, Inc., Debt Pay Gateway, Inc., Capital Debt Solutions, LLC, Justin O'Dell, Matthew Mullen, and Philip Stevens did not have a written do-not-call policy while calls were placed on their behalf to the Plaintiff. .

49. AAA Law Group, LLC, Edgar Benes, Edgar A. Benes, P.A., Trimerge Consulting Group, Inc., Debt Pay Gateway, Inc., Capital Debt Solutions, LLC, Justin O'Dell, Matthew Mullen, and Philip Stevens did not train its agents engaged in telemarketing on the existence and use of any do-not-call list.

50. AAA Law Group, LLC, Edgar Benes, Edgar A. Benes, P.A., Trimerge Consulting

Group, Inc., Debt Pay Gateway, Inc., Capital Debt Solutions, LLC, Justin O'Dell,

Matthew Mullen, and Philip Stevens calls did not provide Mr. Cunningham with the

name of the individual caller or the name of the person or entity on whose behalf the

call was being made.

**AAA Law Group, LLC, Edgar Benes, Edgar A. Benes, P.A., Trimerge**

**Consulting Group, Inc., Debt Pay Gateway, Inc., Capital Debt Solutions, LLC,**

**Justin O'Dell, Matthew Mullen, and Philip Stevens control over their entities**

**and knowledge of  its Illegal Robocalling and Telemarketing**

51.  At all times relevant to the claims alleged herein, Edgar Benes was the sole corporate

officer and executive in charge of Edgar A. Benes, PA and AAA Law Group, LLC,

and. Each and every call was placed on behalf of the corporate entites owned by

Edgar Benes.


52. Edgar Benes was aware that automated calls were being placed on behalf of his

corporations and himself en masse to people, including Plaintiff, and had recieved

previous complaints about these types of calls

53.  As the corporation's senior-most executive, Edgar Benes had the power to stop these

spam campaigns.

54. As these corporation's, senior-most executive, Edgar Benes had the power to fire the

managers, affiliates, agents, and employees taking part of the day-to-day operations

of these illegal robocalling operations. Despite this knowledge of illegal

telemarketing, Edgar Benes continued to use the services of the exact same

telemarketers, which resulted in the Plaintiff being called additional times on his

behalf and at his direction.

55.  Instead, Edgar Benes allowed the calls to continue and the responsible managers,
affiliates, agents, and telemarketers to keep their jobs—despite his knowledge of
frequent do-not-call complaints from recipients of these messages, including the
Plaintiff.

## TRIMERGE CONSULTING AND MATTHEW MULLEN's INVOLVEMENT AND KNOWLEDGE OF THE ILLEGAL TELEMARKETING CALLS

56.  At all times relevant to the claims alleged herein, Matthew Mullen was the sole
corporate officer and executive in charge of Trimerge Consulting Group, Inc, and
each and every call was placed on behalf of the corporate entites owned by Matthew
Mullen

57. Matthew Mullen was aware that automated calls were being placed on behalf of his
corporations and himself en masse to people, including Plaintiff, and had recieved
previous complaints about these types of calls

58.  As the corporation's senior-most executive, Matthew Mullen had the power to stop
these spam campaigns.

59. As these corporation's, senior-most executive, Matthew Mullen had the power to fire
the managers, affiliates, agents, and employees taking part of the day-to-day
operations of these illegal robocalling operations. Despite this knowledge of illegal
telemarketing, Matthew Mullen continued to use the services of the exact same
telemarketers, which resulted in the Plaintiff being called additional times on his
behalf and at his direction.

60.  Instead, Matthew Mullen allowed the calls to continue and the responsible managers,

affiliates, agents, and telemarketers to keep their jobs—despite his knowledge of

frequent do-not-call complaints from recipients of these messages, including the

Plaintiff.

## CAPITAL DEBT SOLUTIONS, LLC AND JUSTIN ODELL's INVOLEVEMENT AND KNOWLEDGE

61.  At all times relevant to the claims alleged herein, Justin Odell was the sole corporate

officer and executive in charge of Capital Debt Solutions, LLC and. each and every

call was placed on behalf of the corporate entites owned by Justin Odell

62.  Justin Odell was aware that automated calls were being placed on behalf of his

corporations and himself en masse to people, including Plaintiff, and had recieved

previous complaints about these types of calls. Justin Odell even stated to the Plaintiff

that he had previously paid fines and settlements related to telemarketing calls on

behalf of his corporation.

63.  As the corporation's senior-most executive, Justin Odell had the power to stop these

spam campaigns.

64.  As these corporation's, senior-most executive, Justin Odell had the power to fire the

managers, affiliates, agents, and employees taking part of the day-to-day operations

of these illegal robocalling operations. Despite this knowledge of illegal

telemarketing, Justin Odell continued to use the services of the exact same

telemarketers, which resulted in the Plaintiff being called additional times on his

behalf and at his direction.

65.  Instead, Justin Odell allowed the calls to continue and the responsible managers,

affiliates, agents, and telemarketers to keep their jobs—despite his knowledge of

frequent do-not-call complaints from recipients of these messages, including the Plaintiff.

### The Plaintiff's cell phone is a residential number

66. The text messages were to the Plaintiff's cellular phonne 615-331-7262, which is the Plaintiff's personal cell phone that he uses for personal, family, and household use. The Plaintiff maintains no landline phones at his residence and has not done so for at least 10 years and primarily relies on cellular phones to communicate with friends and family. The Plaintiff also uses his cell phone for navigation purposes, sending and receiving emails, timing food when cooking, and sending and receiving text messages. The Plaintiff further has his cell phone registered in his personal name, pays the cell phone from his personal accounts, and the phone is not primarily used for any business purpose.

### Violations of the Texas Business and Commerce Code 305.053

67. The actions of AAA Law Group, LLC, Edgar Benes, Edgar A. Benes, P.A., Trimerge Consulting Group, Inc., Debt Pay Gateway, Inc., Capital Debt Solutions, LLC, Justin O'Dell, Matthew Mullen, and Philip Stevens violated the Texas Business and Commerce Code 305.053 by placing automated calls to a cell phone which violate 47 USC 227(b). The calls violated Texas law by placing calls with a pre-recorded message to a cell phone which violate 47 USC 227(c)(5) and 47 USC 227(d) and 47 USC 227(d)(3) and 47 USC 227(e).

68. The calls by AAA Law Group, LLC, Edgar Benes, Edgar A. Benes, P.A., Trimerge Consulting Group, Inc., Debt Pay Gateway, Inc., Capital Debt Solutions, LLC, Justin O'Dell, Matthew Mullen, and Philip Stevens violated Texas law by spoofing the

caller ID's per 47 USC 227(e) which in turn violates the Texas statute.

## I.   FIRST CLAIM FOR RELIEF

### (Non-Emergency Robocalls to Cellular Telephones, 47 U.S.C. § 227(b)(1)(A))

### (Against All Defendants)

1.      Mr. Cunningham realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

2.      The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the TCPA, 47 U.S.C. § 227(b)(1)(A), by making non-emergency telemarketing robocalls to Mr. Cunningham's cellular telephone number without his prior express written consent.

3.      Mr. Cunningham is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(b)(3)(B).

4.      Mr. Cunningham is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(b)(3).

5.      Mr. Cunningham also seeks a permanent injunction prohibiting Defendants and their affiliates and agents from making non-emergency telemarketing robocalls to cellular telephone numbers without the prior express written consent of the called party.

## II.  SECOND CLAIM FOR RELIEF

### (Telemarketing Without Mandated Safeguards, 47 C.F.R. § 64.1200(d))

### (Against All Defendants)

6.       Mr. Cunningham realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

7.       The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of FCC regulations by making telemarketing solicitations despite lacking:

a.       a written policy, available upon demand, for maintaining a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(1); [2]

b.       training for the individuals involved in the telemarketing on the existence of and use of a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(2); [3] and,

c.       in the solicitations, the name of the individual caller and the name of the person or entity on whose behalf the call is being made, in violation of 47 C.F.R. § 64.1200(d)(4). [4]

8.       Mr. Cunningham is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

9.       Mr. Cunningham is entitled to an award of up to $1,500 in damages for each knowing or willful violation. 47 U.S.C. § 227(c)(5).

---

[2] *See id.* at 425 (codifying a June 26, 2003 FCC order).

[3] *See id.* at 425 (codifying a June 26, 2003 FCC order).

[4] *See id.* at 425 – 26 (codifying a June 26, 2003 FCC order).

10.    Mr. Cunningham also seeks a permanent injunction prohibiting Defendants and their affiliates and agents from making telemarketing solicitations until and unless they (1) implement a do-not-call list and training thereon and (2) include the name of the individual caller and entities name in the solicitations.

### III. THIRD CLAIM FOR RELIEF: Violations of The Texas Business and Commerce Code 305.053

11.    Mr. Cunningham realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

12.    The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the **Texas Business and Commerce Code 305.053**, by making non-emergency telemarketing robocalls to Mr. Cunningham's cellular telephone number without his prior express written consent in violation of 47 USC 227 et seq. The Defendants violated 47 USC 227(d) and 47 USC 227(d)(3) and 47 USC 227(e) by using an ATDS that does not comply with the technical and procedural standards under this subsection.

13.    Mr. Cunningham is entitled to an award of at least $500 in damages for each such violation.**Texas Business and Commerce Code 305.053(b)**

14.    Mr. Cunningham is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. **Texas Business and Commerce Code 305.053**(c).

## IV. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Craig Cunningham prays for judgment against Defendants AAA Law Group, LLC, Edgar Benes, Edgar A. Benes, P.A., Trimerge Consulting Group, Inc., Debt Pay Gateway, Inc., Capital Debt Solutions, LLC, Justin O'Dell, Matthew Mullen, and Philip Stevens jointly and severally as follows:

A.     Leave to amend this Complaint to name additional DOESes as they are identified and to conform to the evidence presented at trial;

B.     A declaration that actions complained of herein by Defendants violate the TCPA and Texas state law;

C.     An injunction enjoining Defendants and their affiliates and agents from engaging in the unlawful conduct set forth herein;

D.     An award of $3000 per call in statutory damages arising from the TCPA intentional violations jointly and severally against the corporation and individual for 30 calls.

E.     An award of $1,500 in statutory damages arising from violations of the Texas Business and Commerce code 305.053

F.     An award to Mr. Cunningham of damages, as allowed by law under the TCPA;

G.     An award to Mr. Cunningham of interest, costs and attorneys' fees, as allowed by law and equity

H.     Such further relief as the Court deems necessary, just, and proper.

Craig Cunningham
Plaintiff,                    2/7/2019

Craig Cunningham, Plaintiff, Pro-se 3000 Custer Road, ste 270-206, Plano, Tx 75075